Filed 2/28/25  Marriage of Movsesyan and Arsharuni CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re the Marriage of RAFAEL MOVSESYAN and KRISTINE ARSHARUNI. | B332555 |
| | Los Angeles County Super. Ct. No. BD552622 |
| RAFAEL MOVSESYAN, Respondent, v. KRISTINE ARSHARUNI, Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Bradley S. Phillips, Judge.  Affirmed.

Kristine Arsharuni, in pro. per., for Appellant.

No appearance for Respondent.

In this family law matter, Kristine Arsharuni, an unrepresented individual, appeals from the trial court's order that she pay her former husband Rafael Movsesyan's (petitioner) counsel $35,000 in attorney fees and costs. Arsharuni contends the ordered attorney fees were not reasonable and were based on false statements and false estimates. She also contends she was unable to conduct discovery about petitioner's finances and, as a result, could not present evidence to support her position at the hearing on the attorney fees. Arsharuni has failed to provide an adequate record for us meaningfully to review her contentions of error. We therefore affirm.

## BACKGROUND[1]

This family law matter has been going on for about 10 years. On June 29, 2023, the trial court convened a hearing on petitioner's request for orders (RFO). Petitioner's requests included that the court order Arsharuni to pay his attorney fees. Petitioner was represented by counsel; Arsharuni represented herself. Both parties were sworn in to give testimony.

The first part of the hearing involved a discussion about issues concerning the couple's two children, including "restraining order hearings" scheduled for July 2023. In response to petitioner's counsel's accusation that Arsharuni had failed to bring the children to a designated therapist, Arsharuni responded, "Your Honor, counsel and the petitioner have made

---

[1] In the absence of a clerk's transcript or appellant's appendix, we take our facts exclusively from what we can glean from the reporter's transcript and the court's June 29, 2023 minute order attached to the civil case information statement filed in this court.

false statements numerous times repeatedly over the past ten years. . . . And . . . my attorney and I have asked for an evidentiary hearing two years ago and I still believe an evidentiary hearing is something that should happen to bring everything to light and to show that there are false statements." Arsharuni asked the court "to deny the RFO that they filed pending the girls' restraining order hearings and just to not allow them to submit hundreds of pages that have false statements."

Arsharuni also asked the court to schedule the hearing for a time when her attorney was available. The court noted the attorney wasn't representing Arsharuni in the litigation "at this point." Arsharuni responded, "I need to come up with the money to be able to pay her so she can continue on this case. I am struggling to meet the minimum requirements of living expenses . . . ." The court declined to reschedule the then-current and upcoming hearings but stated Arsharuni could "submit something from [the attorney]" stating she was representing Arsharuni.

The court then turned to the request for attorney fees. The court noted counsel's requested fees included estimates for fees counsel would incur in connection with the restraining orders. The court also noted petitioner's income and expense declaration stated, " 'I paid my attorneys zero.' " Petitioner's counsel explained that she had not prepared a bill yet.

Counsel argued the fee issue was "res judicata a little bit." She stated the court already had made "a finding of disparity and the basis was the equity in the home." Counsel argued Arsharuni had not taken any equity out of the home, she had paid counsel earlier with "a cashier's check and money orders," and Arsharuni

had paid "70 or something thousand towards this house that she's not living in."

In response, Arsharuni said she had brought her utility bills, and her neighbors could testify she lived in the house with her children. She testified she had paid $45,000 to petitioner's counsel between October 2021 and February 2022 by taking a loan out "with [her] mortgage company"—not with "cash lying around the house." Arsharuni testified she had monthly statements as proof and she would be paying the loan off for at least another three and a half years. She also asserted the loan payments were included on her income and expense form, and her credit cards were maxed out. Arsharuni stated she already had disclosed in 2021 that she was paying for necessary work on the house, including roofing and the HVAC system. She testified she was "struggling."

After hearing from the parties, the court stated it was "going to order" Arsharuni to pay petitioner's counsel $35,000 in fees and costs within 30 days. Arsharuni responded, "There is no way I have access to any of that. . . . I cannot borrow against my house because there is already a high debt-to-income ratio. I'm bankrupt at this point."

The court continued, "The court finds there is a substantial disparity in access to funds based on respondent's income versus petitioner's income and respondent's assets relative to petitioner's assets and on that basis, counsel asked for [a] whole lot more money but I'm not going to award that at this point but I do think that it's just and reasonable to award $35,000 to petitioner in fees and costs." The court permitted Arsharuni to pay the amount in two monthly installments: $17,500 to be

4

paid no later than July 28, and the second installment to be paid by August 31.

Arsharuni then asked about a motion she had filed to compel further discovery responses from petitioner as to why he had quit his job and what other work he was doing. According to Arsharuni, the motion had been on calendar in April 2022 but was taken off calendar. The court explained Arsharuni should raise any discovery issue with the court through a request. Arsharuni questioned how she could be ordered to pay attorney fees if she didn't have discovery. The court explained, "The evidence before the court now[,] and I gather the evidence before the court in 2021[,] shows that there is a big discrepancy in access to funds between the two of you and you're able to contribute, not to pay all of what petitioner's counsel has suggested but to contribute." Arsharuni responded, "I can't live. [¶] . . . I can't even afford to pay my own attorney to be with me today."

## DISCUSSION

### 1. *Applicable law and standard of review*

The court did not refer to the statutory basis for its award of attorney fees to petitioner. It appears the court relied on Family Code section 2030. Under that statute, the trial court "shall ensure" a parity of access to legal representation, "by ordering, if necessary," based on an assessment of the parties' incomes and needs, that one party pay the other party's attorney fees and costs where there is a disparity in access to funds to retain counsel, and one party is able to pay for legal representation for both parties. (Fam. Code, § 2030, subd. (a); see Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2024) ¶ 5.182.) When a party asks the court to

5

make such an order, the court must make express findings as to the appropriateness of an attorney fee award, the existence of a disparity in access to funds to retain counsel, and the ability of one party to pay both parties' legal representation. (Fam. Code, § 2030, subd. (a)(2); see *In re Marriage of Morton* (2018) 27 Cal.App.5th 1025, 1050 [§ 2030 requires the court to make express findings].) The amount of the award must be "just and reasonable under the relative circumstances of the respective parties." (Fam. Code, § 2032, subd. (a).) "Financial resources are only one factor for the court to consider in determining how to apportion the overall cost of the litigation equitably between the parties under their relative circumstances." (*Id.*, subd. (b).)

The trial court exercises its discretionary authority when considering a motion for attorney fees, but it must exercise that discretion " 'within the confines of the applicable legal principles.' " (*In re Marriage of Morton, supra*, 27 Cal.App.5th at p. 1050 [trial court must comply with mandatory provisions of the statute].) We review the trial court's decision for abuse of discretion but in doing so review its findings of fact for substantial evidence and its conclusions of law de novo and will reverse its application of the law to the facts only if arbitrary and capricious. (*In re Marriage of Nakamoto & Hsu* (2022) 79 Cal.App.5th 457, 469.)

## 2. Arsharuni failed to provide an adequate record and therefore has forfeited her arguments on appeal

From what we can gather, Arsharuni contends the trial court erred because Arsharuni did not have the means to pay $35,000 to petitioner's attorney, petitioner and his attorney made false statements about petitioner's income and the fees and costs incurred, and petitioner gave insufficient discovery

6

responses about his financial information. At the hearing, Arsharuni argued she was unable to pay the fee award. She testified she had borrowed $45,000 against her house to pay petitioner's counsel, she could not borrow any more against the house, and she had maxed out her credit cards. She also accused petitioner and his counsel of making false statements. Aside from Arsharuni's testimony at the hearing, however, the appellate record includes none of the evidence before the trial court, nor the briefing the parties presented on the issue.

Under California Rules of Court,[2] rule 8.120(a)(1), "the record on an appeal in a civil case must contain . . . [a] record of the written documents from the superior court proceedings" in one of several forms, including a clerk's transcript or appendix. Here, Arsharuni provided a reporter's transcript of the hearing, but no clerk's transcript or appendix.[3] (Rule 8.120(b) [record of oral proceedings required].) We therefore do not have any of the relevant written records filed in this case.

Although Arsharuni represents herself on appeal, as she did at the June 29, 2023 hearing, she " 'is to be treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys.' " (*First American Title Co. v. Mirzaian* (2003) 108 Cal.App.4th 956,

---

[2]     References to rules are to the California Rules of Court.

[3]     In her notice designating record on appeal—filed in the superior court on October 18, 2023—Arsharuni opted to provide the record of written documents filed in the case by way of appendix under rule 8.124. Arsharuni never filed an appendix, however. On our own motion, we take judicial notice of Arsharuni's designation notice. (Evid. Code, § 452, subd. (d).)

958, fn. 1.) She is thus bound to follow the "fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment. [Citations.] 'This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' [Citations.] 'In the absence of a contrary showing in the record, all presumptions in favor of the trial court's action will be made by the appellate court. "[I]f any matters could have been presented to the court below which would have authorized the order complained of, it will be presumed that such matters were presented." ' [Citation.] ' "A necessary corollary to this rule is that if the record is inadequate for meaningful review, the appellant defaults and the decision of the trial court should be affirmed." ' [Citation.] 'Consequently, [the appellant] has the burden of providing an adequate record. [Citation.] Failure to provide an adequate record on an issue requires that the issue be resolved against [the appellant].' [Citation.]" (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609 (*Jameson*).) We also treat as forfeited points raised but unsupported by reasoned argument and citations to authority. (*Delta Stewardship Council Cases* (2020) 48 Cal.App.5th 1014, 1075.)

In her opening brief, Arsharuni makes several factual assertions and refers to several documents filed in the trial court. None is supported with a record citation.[4]  Nor could they be,

---

[4]   Arsharuni cites to "CT 11" twice.  We presume she intended to cite the reporter's transcript, as there is no clerk's transcript—

as Arsharuni did not prepare an appellant's appendix. She thus has provided no support for any of her factual assertions relating to her or petitioner's income, access to assets, or expenses, or for the background facts described in her opening brief.

For example, Arsharuni refers to petitioner's RFO filed in May 2023 asking the court to order Arsharuni to pay his attorney fees based on petitioner's inability to do so. She also refers to "a refusal letter from her mortgage company dated 2023 confirm[ing] [her] inability to borrow more" against the equity of her home, and "statements and letters stating [her] inability to borrow against [her] retirement" account. None of these documents is before us. Nor do we have the billing statements petitioner's counsel apparently prepared that Arsharuni contends included excessive hours and discrepancies. The parties' income and expense declarations—mentioned during the hearing— also are not part of the appellate record. Simply put, we do not know on what evidence the court relied—including the parties' respective incomes—when it concluded there was "a big discrepancy" between Arsharuni's and petitioner's access to funds and that $35,000 was a "just and reasonable" amount of fees and costs for Arsharuni to pay petitioner.

Arsharuni testified she did not have the means to pay for the fees, but that testimony alone is insufficient for us to find the trial court abused its discretion. The trial court made the express findings required under section 2030 and specifically

usually abbreviated "CT." Page 11 of the reporter's transcript does not support the factual statements for which Arsharuni cited it, however.

9

stated it had considered the evidence before it in making those findings. Without an adequate record, we must presume the evidence supported the trial court's findings. (*Jameson, supra*, 5 Cal.5th at pp. 608–609.) Accordingly, we conclude the trial court did not abuse its discretion in ordering Arsharuni to contribute $35,000 toward petitioner's attorney fees and costs.[5]

## DISPOSITION

The order is affirmed. As respondent did not participate in this appeal, no costs are awarded.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EGERTON, J.

We concur:

EDMON, P. J.

ADAMS, J.

---

[5] Moreover, Arsharuni cites no authority to support her arguments, other than to Evidence Code sections 412 and 413 in support of her contention that the court must "view with mistrust" petitioner's income and expense declaration. As that document is not before us, we can't tell why that evidence is weaker than other available evidence or what evidence petitioner allegedly suppressed. (Evid. Code, §§ 412, 413.)